UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KEVIN DAVID BENNETT

                        Plaintiff,

        v.

NANCY A. BERRYHILL,[1] Commissioner of
Social Security,

                        Defendant.

_____

**REPORT
and
RECOMMENDATION**

**15-CV-00237A(F)**

APPEARANCES:         LAW OFFICES OF DOLCE PANEPINTO, P.C.
                        Attorneys for Plaintiff
                        ANNE M. WHEELER, of Counsel
                        1600 Main Place Tower
                        350 Main Street
                        Buffalo, New York 14202

                        JAMES P. KENNEDY
                        ACTING UNITED STATES ATTORNEY
                        Attorney for Defendant
                        HEETANO SHAMSOONDAR
                        Assistant United States Attorney, of Counsel
                        Federal Centre
                        138 Delaware Avenue
                        Buffalo, New York 14202, and
                        STEPHEN P. CONTE
                        Regional Chief Counsel
                        United States Social Security Administration
                        Office of the General Counsel, of Counsel
                        26 Federal Plaza
                        Room 3904
                        New York, New York 10278

---

[1] Nancy A. Berryhill became Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Carolyn Colvin as the defendant in this suit. No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

This action was referred to the undersigned by Honorable Richard J. Arcara on July 20, 2015. (Doc. No. 6). The matter is presently before the court on motions for judgment on the pleadings, filed on July 15, 2015, by Plaintiff (Doc. No. 5), and on October 21, 2015, by Defendant (Doc. No. 11).

## BACKGROUND

Plaintiff Kevin Bennett, ("Plaintiff" or "Bennett"), seeks review of Defendant's decision denying him Supplemental Security Income ("SSI") ("disability benefits") under, Title II of the Social Security Act ("the Act"). In denying Plaintiff's application for disability benefits, Defendant determined that between Plaintiff's alleged onset date of October 26, 2009, and Plaintiff's date last insured on June 30, 2010, Plaintiff had the severe impairments of multiple sclerosis ("MS"), left eye neuritis, discogenic lumbar spine, right elbow epicondylitis (tendon inflammation), right wrist degenerative changes, right shoulder supraspinatus tear with mild to moderate osteoarthritis of the acromioclavicular joint ("AC joint"), and temporomandibular joint pain, and that Plaintiff does not have an impairment or combination of impairments within the Act's definition of impairment. (R. 14). [2] The ALJ determined that even if Plaintiff's medically determinable impairments could reasonably be expected to produce Plaintiff's alleged symptoms, their alleged persistence and limiting effects by Plaintiff were not credible.

---

[2] "R" references are to the page numbers of the Administrative Record submitted in this case for the Court's review.

(R. 16). The ALJ further determined that Plaintiff would need to establish disability before June 30, 2010, the date Plaintiff had sufficient quarters of coverage to meet insured status requirements, in order to establish a period of disability to receive benefits under Title II of the Act. (R. 14). Defendant further determined that Plaintiff had the residual functional capacity ("RFC"), to perform less than sedentary work with limitations to lifting and carrying 10 pounds, sitting or standing for two hours in an eight-hour day, with no work around unprotected heights, bending, climbing, crawling, balancing, kneeling, squatting, stooping, handling, pushing, pulling, or reaching with the upper extremity, and occasional limitation to peripheral vision or depth perception. (R. 15). As such, Plaintiff was found not disabled, as defined in the Act, at any time from the alleged onset date through Plaintiff's date last insured on June 30, 2010.

## PROCEDURAL HISTORY

Plaintiff filed his application for disability benefits on April 18, 2012 (R. 128), that was initially denied by Defendant on June 18, 2012, and, pursuant to Plaintiff's request filed on July 11, 2012 (R. 82-84), a hearing was held before Administrative Law Judge Robert T. Harvey ("Harvey" or "the ALJ"), on August 21, 2013, in Buffalo, New York. (R. 29-71). Plaintiff, represented by Phillip V. Urban, Esq. ("Urban"), appeared and testified at the hearing (R. 29-64), along with vocational expert ("VE") David Festa ("Festa" or "the VE"). The ALJ's decision denying Plaintiff's claim was rendered on September 24, 2013. (R. 12-22). Plaintiff requested review by the Appeals Council, and the ALJ's decision became Defendant's final decision when the Appeals Council denied Plaintiff's request for review on January 23, 2015. (R. 1-4). This action followed on March 19,

2015, with Plaintiff alleging that the ALJ erred by failing to find him disabled. (Doc. No. 1).

On July 15, 2015, Plaintiff filed a motion for judgment on the pleadings ("Plaintiff's motion"), accompanied by a memorandum of law (Doc. No. 5) ("Plaintiff's Memorandum"). Defendant filed, on October 21, 2015, Defendant's motion for judgment on the pleadings ("Defendant's motion"), accompanied by a memorandum of law (Doc. No. 11) ("Defendant's Memorandum"). Plaintiff filed a reply to Defendant's motion for judgment on the pleadings on November 19, 2015 ("Plaintiff's Reply Memorandum") (Doc. No. 12). Oral argument was deemed unnecessary. Based on the following, Plaintiff's motion for judgment on the pleadings should be GRANTED; Defendant's motion for judgment on the pleadings should be DENIED.


## **FACTS**[3]

Plaintiff Kevin Bennett, ("Bennett" or "Plaintiff"), was born on April 28, 1963, lives with his wife and two children, and worked most recently as an asbestos removal contractor and construction laborer. (R. 149,162). Plaintiff alleges that he is not able to work as a result of depression, knee and back impairments, eye neuritis and MS. (R. 199).

On January 27, 2009, Plaintiff visited David Hojnacki, M.D. ("Dr. Hojnacki"), at the Baird Multiple Sclerosis Center in Buffalo, New York, for a follow-up neurological examination related to a January 23, 2009, incident of abnormal vision in Plaintiff's left

---

[3] Taken from the pleadings and administrative record.

eye. (R. 865). Upon examination and review of a magnetic resonance imaging ("MRI") scan completed on January 24, 2009, Dr. Hojnacki diagnosed Plaintiff with inflammatory demyelination of the brain, and recommended Plaintiff undergo a blood test to confirm diagnosis of multiple sclerosis ("MS"). (R. 867).

On February 6, 2009, Plaintiff underwent an MRI scan that Mark Heckler, M.D. ("Dr. Heckler"), opined revealed two brain lesions related to Plaintiff's MS. (R. 208).

On February 23, 2009, Dr. Hojnacki reviewed Plaintiff's February 2, 2009 MRI scan, and prescribed Avonex to treat Plaintiff's MS symptoms. (R. 376).

On March 17, 2009, Dr. Hojnacki completed a physical examination on Plaintiff who reported taking his first Avonex injection on March 11, 2009. (R. 373). Dr. Hojnacki opined that based on Plaintiff's optic neuritis episode on January 24, 2009, and new brain lesions on Plaintiff's March 12, 2009 MRI scan, Plaintiff meets the McDonald[4] diagnostic criteria for MS. *Id.*

On June 16, 2009, Dr. Hojnacki noted that Plaintiff reported flu-like symptoms after taking Plaintiff's Avonex medication (R. 368), and that Plaintiff reported intermittent vertigo, feeling off balance, persistent abnormal vision of Plaintiff's left eye and significant fatigue. (R. 370). Dr. Hojnacki opined, prescribed Naproxen (pain) and recommended that Plaintiff undergo a cervical spine MRI. *Id.*

On October 26, 2009, Plaintiff tripped and fell at work while carrying an I-beam and was treated at the Buffalo General Hospital emergency room for left back and right upper extremity pain and back spasms. (R. 226-28). X-rays of Plaintiff's right elbow,

---

[4] McDonald criteria use MRI scans of an individual's brain, cerebrospinal fluid, and spinal cord to diagnose MS.

hand, shoulder, cervical, thoracic and lumbar spine showed normal results. (R. 228, 244-48).

On November 23, 2009, Cameron B. Huckell, M.D. ("Dr. Huckell"), completed a consultative examination on Plaintiff and noted that Plaintiff reported neck and lower back pain since October 26, 2009, after Plaintiff fell while carrying an I-beam at work. (R. 448). Upon examination, Plaintiff exhibited normal gait, good balance and concentration, reduced cervical and lumbar ROM, and functional range of motion of the shoulders, wrists, elbows, knees, hips, and ankles. (R. 451). A straight leg raising test[5] showed positive results on Plaintiff's right side while in the supine position, leading Dr. Huckell to evaluate Plaintiff with moderate partial disability and recommend that Plaintiff avoid repetitive forward bending, stooping, reaching, twisting, crawling, climbing, and overhead activities, not lift anything more than 20 pounds, and avoid sitting, standing, or walking for more than two hours at a time. (R. 451).

On December 8, 2009, Dr. Huckell completed a physical examination on Plaintiff and noted that Plaintiff was able to walk with a normal gait and stand on his heels and toes but showed significant paravertebral rigidity and limited ROM, and diagnosed Plaintiff with cervicalgia, and opined that Plaintiff suffered significant injuries to his spine as a result of Plaintiff's accident at work, and should avoid repetitive bending, stooping, reaching, twisting, crawling, climbing, repetitive overhead activities, not lift anything that weighs more than 20 pounds, avoid sitting, standing or walking for more than 2 hours at a time, and that Plaintiff's workday should not exceed 8 hours. (R. 443).

---

[5] A straight leg raising test uses manipulation to determine whether an individual's low back pain results from a herniated disc.

On January 5, 2010, A. Marc Tetro, M.D. ("Dr. Tetro"), completed a consultative examination on Plaintiff who reported right arm pain.  (R. 356).  An X-ray of Plaintiff's right elbow showed normal results (R. 358), leading Dr. Tetro to prescribe anti-inflammatory medication (swelling), and physical therapy, and opine that Plaintiff was limited to light duty work with no repetitive right arm grasping or lifting more than 10 pounds.  (R. 360).

On January 26, 2010, Plaintiff visited Robert Kull, D.D.S. ("Dr. Kull"), for treatment of jaw and neck pain.  (R. 316-17).  Dr. Kull recommended that Plaintiff undergo physical therapy for limited range of motion ("ROM") of his jaw, undergo an MRI scan, and noted that Plaintiff managed stairs slowly.  (R. 317).  Plaintiff returned to Dr. Kull on March 9, 2010, with increased jaw pain and acute pain upon palpation.   Dr. Kull reviewed an MRI scan of Plaintiff's jaw on June 1, 2010, that revealed anterior displacement of the disc of Plaintiff's temporomandibular joint ("TMJ") (joint that connects the jaw to the skull).  (R. 771).

On February 2, 2010, Plaintiff underwent an MRI scan of Plaintiff's cervical spine that Gregg Feld, M.D. ("Dr. Feld"), opined revealed straightening of the normal lordosis (curve) of Plaintiff's cervical spine, mild bulge with no stenosis of Plaintiff's C2[6]-C3, C4-C5, C5-C6 C6-C7 and C7-T1[7] disc segments with spinal stenosis and mild narrowing of Plaintiff's C3-C4 disc segment.  (R. 439).  An MRI scan of Plaintiff's lumbar spine taken the same day showed mild diffuse bulge associated with annular tear extending into Plaintiff's left foramen (nerve opening) with mild right-sided encroachment of Plaintiff's

_____

[6] C2 – C7 refers to numbered segments of an individual's cervical spine.
[7] T1 refers to a numbered segment of an individual's thoracic spine.

L3[8] nerve root, mild bulge at Plaintiff's l4-l5 disc segment without stenosis, a 2 millimeter central and left sided broad-based herniation of the nucleus pulposus of Plaintiff's L5-S1 disc segment, with mild facet arthropathy (joint problem), and bilateral foraminal (spinal narrowing) encroachment of Plaintiff's L5 nerve root.  (r. 438-41).

On February 18, 2010, Dr. Tetro completed a follow-up consultation with Plaintiff for right wrist pain, and noted that Plaintiff reported pain and limited motion likely produced by a coronoid fracture and assessed Plaintiff with right elbow possible coronoid (elbow) fracture, right radial tunnel syndrome, right wrist sprain, right wrist flexor tenosynovitis, and right wrist carpal bossing, and recommend Plaintiff undergo cortisone injection for pain relief.  (R. 362-64).

On February 26, 2010, Dr. Hojnacki noted that Plaintiff reported severe depression, severe neck pain, facial numbness, and weakness in Plaintiff's arms, with difficulty getting out pf bed as a result of Plaintiff's pain.  (R. 366).  Upon examination, Dr. Hojnacki assessed Plaintiff with difficulty with tandem gait and noted that Plaintiff was not able to hop on either foot as a result of pain, diagnosed Plaintiff with MS, and traumatic injury after slipping and falling at work on October 26, 2009, with severe anxiety and depression secondary to Plaintiff's work injury, and prescribed Lexapro to treat Plaintiff's depression.  (R. 367).

Plaintiff returned to Dr. Huckell on September 21, 2010, where Dr. Huckell opined that Plaintiff had a temporary partial disability and should avoid repetitive bending, stooping, reaching, twisting, crawling, climbing, repetitive overhead activities,

---

[8] L3 refers to a numbered segment of an individual's lumbar spine

and not lift anything that weighed more than 20 pounds, avoid sitting, standing or walking for more than 2 hours at a time, and that Plaintiff's workday should not exceed 8 hours.  (R. 416).

On March 17, 2011, Keith Carini, D.D.S. ("Dr. Carini"), completed a physical examination of Plaintiff and opined that Plaintiff's TMJ was a result of Plaintiff's cervical misalignment and that Plaintiff was 95-100 percent disabled.  (R. 529).

On April 12, 2012, Ronald Horvath, M.D. ("Dr. Horvath"), completed an independent medical examination on behalf of the Worker's Compensation Board, and assessed Plaintiff with ability to frequently lift or carry 10 pounds, occasionally lift up to 20 pounds, and no bending climbing, kneeling, stooping or squatting, and no ability to operate machinery, that Plaintiff was permanently impaired but was able to perform work activities with restrictions.  (R. 520-21).

On April 17, 2012, Michael D. Calabrese, M.D. ("Dr. Calabrese"), completed a physical examination on Plaintiff who exhibited decreased ROM of his cervical and lumbar spine (R. 530-31).  Dr. Calabrese diagnosed Plaintiff with cervical disc herniation, right shoulder sprain/strain, right elbow sprain/strain, cervical radiculitis/radiculopathy, palpable myospasm, lumbrosacral radiculitis/radiculopathy, TMJ disorder, and anxiety and depression, and opined that Plaintiff was deemed permanently totally impaired and unable to perform gainful employment.  (R. 531-32).

On April 13, 2012, Dr. Calabrese opined that Plaintiff was permanently disabled as of June 23, 2011.  (R. 538).

## DISCUSSION

**1.    Disability Determination Under the Social Security Act**

An individual is entitled to disability insurance benefits under the Social Security

Act if the individual is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . ..  An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(1)(A) & (2)(A), and 1382c(a)(3)(A) & (C)(I).

Once a claimant proves that he or she is severely impaired and unable to

perform any past relevant work, the burden shifts to the Commissioner to prove there is

alternative employment in the national economy suitable to the claimant.  *Parker v.*

*Harris,* 626 F.2d 225, 231 (2d Cir. 1980).

**A.    Standard and Scope of Judicial Review**

The standard of review for courts reviewing administrative findings regarding

disability benefits, 42 U.S.C. §§ 401-34 and 1381-85, is whether the administrative law

judge's findings are supported by substantial evidence.  *Richardson v. Perales*, 402

U.S. 389, 401 (1971).  Substantial evidence requires enough evidence that a

reasonable person would "accept as adequate to support a conclusion."  *Consolidated*

*Edison Co. v. National Labor Relations Board*, 305 U.S. 197, 229 (1938).

When evaluating a claim, the Commissioner must consider "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability (testified to by the claimant and others), and . . . educational background, age and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)). If the opinion of the treating physician is supported by medically acceptable techniques and results from frequent examinations, and the opinion supports the administrative record, the treating physician's[9] opinion will be given controlling weight. *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993); 20 C.F.R. § 404.1527(d); 20 C.F.R. § 416.927(d).

The Commissioner's final determination will be affirmed, absent legal error, if it is supported by substantial evidence. *Dumas,* 712 F.2d at 1550; 42 U.S.C. §§ 405(g) and 1383(c)(3). "Congress has instructed . . . that the factual findings of the Secretary,[1] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability insurance benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

such activity the inquiry ceases and the claimant is not eligible for disability benefits.  *Id.*
The next step is to determine whether the applicant has a severe impairment which
significantly limits the physical or mental ability to do basic work activities as defined in
the applicable regulations.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  Absent an
impairment, the applicant is not eligible for disability benefits.  *Id.*  Third, if there is an
impairment and the impairment, or an equivalent, is listed in Appendix 1 of the
regulations and meets the duration requirement, the individual is deemed disabled,
regardless of the applicant's age, education or work experience, 20 C.F.R. §§
404.1520(d) and 416.920(d), as, in such a case, there is a presumption the applicant
with such an impairment is unable to perform substantial gainful activity.[2]  42 U.S.C. §§
423(d)(1)(A) and 1382(c)(a)(3)(A); 20 C.F.R. §§ 404.1520 and 416.920.  *See also*
*Cosme v. Bowen*, 1986 WL 12118, * 2 (S.D.N.Y. 1986); *Clemente v. Bowen*, 646
F.Supp. 1265, 1270 (S.D.N.Y. 1986).

However, as a fourth step, if the impairment or its equivalent is not listed in
Appendix 1, the Commissioner must then consider the applicant's "residual functional
capacity" and the demands of any past work. 20 C.F.R. §§ 404.1520(e); 416.920(e).  If
the applicant can still perform work he or she has done in the past, the applicant will be
denied disability benefits.  *Id.*  Finally, if the applicant is unable to perform any past
work, the Commissioner will consider the individual's "residual functional capacity," age,
education and past work experience in order to determine whether the applicant can

---

[2] The applicant must meet the duration requirement which mandates that the impairment must last or be
expected to last for at least a twelve-month period.  20 C.F.R. §§ 404.1509 and 416.909.

perform any alternative employment. 20 C.F.R. §§ 404.1520(f), 416.920(f). *See also Berry,* 675 F.2d at 467 (where impairment(s) are not among those listed, claimant must show that he is without "the residual functional capacity to perform [her] past work"). If the Commissioner finds that the applicant cannot perform any other work, the applicant is considered disabled and eligible for disability benefits. 20 C.F.R. §§ 404.1520(g), 416.920(g). The applicant bears the burden of proof as to the first four steps, while the Commissioner bears the burden of proof on the final step relating to other employment. *Berry,* 675 F2d at 467. In reviewing the administrative finding, the court must follow the five-step analysis to determine if there was substantial evidence on which the Commissioner based the decision. *Richardson,* 402 U.S. at 410.

**B.     Substantial Gainful Activity**

The first inquiry is whether the applicant engaged in substantial gainful activity. "Substantial gainful activity" is defined as "work that involves doing significant and productive physical or mental duties" done for pay or profit. 20 C.F.R. § 404.1510(a)(b). Substantial work activity includes work activity that is done on a part-time basis even if it includes less responsibility or pay than work previously performed. 20 C.F.R. § 404.1572(a). Earnings may also determine engagement in substantial gainful activity. 20 C.F.R. § 404.1574. In the instant case, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 26, 2009, the date of Plaintiff's application for benefits, and that Plaintiff's date last insured was June 30, 2010. (R. 14). Plaintiff does not contest this determination.

**C.** **Severe Physical or Mental Impairment**

The second step of the analysis requires a determination whether Plaintiff had a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509 and significantly limits the Plaintiff's ability to do "basic work activities." The Act defines "basic work activities" as "abilities and aptitudes necessary to do most jobs," and includes physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) ("§ 1521"), 416.921(b).

In this case, the ALJ determined that Plaintiff had the severe impairments of MS, left eye neuritis, discogenic lumbar spine, lumbar radiculopathy, discogenic cervical spine, cervical radiculopathy, right elbow epicondylitis, right wrist degenerative changes, right shoulder supraspinatus tear with mild to moderate osteoarthritis of the acromioclavicular joint, and temporomandibular joint pain as defined under 20 C.F.R. § 404.1520(c). (R. 14). Plaintiff does not contest the ALJ's step two findings.

**D.** **Listing of Impairments, Appendix 1**

The third step is to determine whether a claimant's impairment or impairments are listed in the regulations at Appendix 1 of 20 C.F.R. Pt. 404, Subpt. P ("The Listing of Impairments"). If the impairments are listed in the Appendix, and the duration requirement is satisfied, the impairment or impairments are considered severe enough to prevent the claimant from performing any gainful activity and the claimant is

considered disabled.  20 C.F.R. §§ 404.1525(a), 416.925(a); *Melville v. Apfel*, 198 F.3d.

45, 51 (2d Cir. 1999) ("if the claimant's impairment is equivalent to one of the listed

impairments, the claimant is considered disabled").  The relevant listings of impairments

in this case include 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 1.02 ("§ 1.02") (Major

dysfunction of a joint), 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 1.04 ("§ 1.04")

(Disorders of the spine), and 20 C.F.R. Pt. 404, Subpt. P, Appendix 1, § 11.09

("§ 11.09") (Multiple sclerosis).  In this case, the ALJ found that Plaintiff's impairments

did not meet or equal any of the listed impairments.  (R. 15).  Plaintiff does not contest

the ALJ's findings under step three of the disability review process.

Treating Physician's Rule[10]

Plaintiff alleges that the ALJ violated the treating physician rule by affording little

weight to work restrictions put forth by Drs. Horvath, Huckell and Tetro.  Plaintiff's

Memorandum at 8.  Defendant maintains that no error results from the ALJ granting little

weight to the opinions of Drs. Horvath, Huckell and Tetro, as such opinions occurred

after the date of Plaintiff's date last insured (June 30, 2010), and were therefore outside

of the relevant period of disability.  Defendant's Memorandum at 18-19.  Specifically,

Defendant points to the ruling in *Arnone v. Bowen* ("*Arnone*"), 882 F.2d 34, 37-38 (2d

Cir. 1989) and *Gold v. Secretary of Health Education and Welfare* ("*Gold*"), 463 F.2d 38,

40-41 (2d Cir. 1977), to support Defendant's contention that evidence provided after

expiration of a claimant's period of disability may not be used to determine the status of

---

[10] Recent revisions to the Code of Federal Regulations have eliminated the treating physician's rule
effective March 27, 2017.  As here, such revisions are not applicable to decisions issued prior to that
date. *See* 20 C.F.R. § 404.1527 (evaluating opinion evidence for claims filed before March 27, 2017).

a claimant's disability. Defendant's Memorandum at 18-19. Defendant's argument is misplaced. In *Arnone,* the claimant provided evidence of disability prior and subsequent to the claimant's insured status period, but no evidence to support disability during the claimant's insured status period. *Arnone,* 882 F.2d 34 at 38. In this case, Plaintiff provided evidence related to Plaintiff's impairments both during and after the insured status period. The court's ruling in *Arnone* is therefore not applicable here. Plaintiff's reliance on the court's ruling in *Gold* is also misplaced, as the claimant in *Gold* was deemed disabled 18 months after expiration of her insured status period and provided evidence of her impairments prior to the insured status period thus affording the court the opportunity to deem the claimant disabled based on an entirety of the claimant's submitted evidence. *Gold*, 463 F2d. 38 at 40-42. More analogous to the instant case is the ruling set forth in *Loren v. Astrue ("Loren")*, 553 F.Supp.2d 281 (W.D.N.Y. 2008), where the court relies on *Perez v. Chater,* 77 F.3d 41, 48 (2d Cir. 1996), for the principle that ("[a] treating physician's retrospective medical assessment of a patient may be probative when based on acceptable diagnostic techniques."). Similarly, in this case, Plaintiff provided evidence to support that Plaintiff was disabled for the period between October 26, 2009, and June 30, 2010, and to support Plaintiff's disability after the date upon which Plaintiff's insured status expired. The ALJ afforded great weight to Dr. Huckell's residual functional assessment of Plaintiff on March 9, 2010 (R. 434-36), and little weight to Dr. Huckell's similar findings on Plaintiff's ability to function on October 9, 2012, reasoning that Dr. Huckell's findings on October 9, 2012, occurred two years past Plaintiff's date last insured. (R. 19). The ALJ afforded little weight to the functional assessment of Dr. Horvath that Plaintiff should never operate machinery, bend, stoop,

squat, climb or kneel, and never be exposed to temperature extremes, high humidity or environmental toxins (R. 19, 520), and little weight to Dr. Tetro's opinion on Plaintiff's shoulder restrictions on January 4, 2013. *Id.* Notably, the ALJ includes no consideration of Dr. Calabrese's weekly examinations during the period between July 6, 2012 and January 24, 2013, wherein Dr. Calabrese opined that Plaintiff was permanently disabled from work (R.905-974), and mentions only in passing that Plaintiff's testimony that he fell down stairs resulted from balance problems Plaintiff experienced in 2012. (R. 19). As in *Loren*, when gaps exist in the record submitted to the ALJ for a finding on a claimant's disability, ALJs are under an affirmative duty to develop a claimant's medical history, and develop the record during the critical period around the period when the claimant's insured status expired to provide the ALJ with a retrospective of the claimant's condition. *Loren,* 553 F.Supp.2d 281 at 288-89. The ALJ's failure to address the gaps in Plaintiff's record therefore requires remand. Upon remand, the ALJ should re-contact Drs. Calabrese, Horvath, Huckell, and Tetro to determine the extent that Plaintiff's conditions deteriorated between the Plaintiff's date last insured on June 30, 2010, and the evidence of Plaintiff's testimony and medical examinations that occurred after Plaintiff's date last insured. Should the district judge find that remand is not required in accordance with the foregoing, in the interest of completeness the undersigned proceeds to discuss the remaining steps of the disability analysis.

**Credibility of Plaintiff's Subjective Complaints**

In the instant case, the ALJ, as required, evaluated Plaintiff's impairments under 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526, and determined that although the

record established that Plaintiff has the severe impairments of MS, left eye neuritis, discogenic (damaged vertebral disc) lumbar spine, lumbar radiculopathy, discogenic cervical spine, cervical radiculopathy, right elbow epicondylitis, right wrist degenerative changes, right shoulder supraspinatus tear with mild to moderate osteoarthritis of the acromioclavicular joint, and temporomandibular joint pain, Plaintiff's statements concerning the intensity, persistence and limiting effects of Plaintiff's symptoms were not credible to the extent inconsistent with Plaintiff's testimony. (R. 19). Plaintiff contests the ALJ's credibility determination, specifically, that the ALJ's findings on Plaintiff's credibility provides no reasoning to support the ALJ's findings. Plaintiff's Memorandum at 7.

It is the function of the ALJ, not the court, to assess the credibility of witnesses. *See Tankisi v. Commissioner of Social Security*, 521 Fed. Appx. 29, 35 (2d Cir. 2013). Pain or other symptoms may be important factors contributing to a disability claimant's functional loss, and affect a claimant's ability to perform basic work activities where relevant medical signs or laboratory findings show the existence of a medically determinable impairment that could "reasonably" be expected to cause the associated pain or other symptoms. 20 C.F.R. § 404.1529(c)(3). "A claimant's testimony is entitled to considerable weight when it is consistent with and supported by objective medical evidence demonstrating that the claimant has a medical impairment which one could reasonably anticipate would produce such symptoms." *Hall v. Astrue*, 677 F.Supp.2d 617, 630 (W.D.N.Y. 2009) (citing *Latham v. Commissioner of Social Security*, 2009 WL 1605414, at *15 (N.D.N.Y. 2009)). In this case, the ALJ's finding on Plaintiff's credibility is without substantial evidence as Plaintiff's testimony is consistent with substantial

medical evidence in the record. During the administrative hearing on August 21, 2013, Plaintiff testified that he has difficulty with balance, suffered from vision difficulties as a result of his MS, pain in his jaw, and back, shoulder and elbow pain (R. 36-49), and substantial evidence supports that Plaintiff experienced such symptoms. In particular, Dr. Hojnacki noted that Plaintiff had difficulties with vision on January 23, 2009 (R. 865), and June 16, 2009 (R. 370), and opined that Plaintiff's left optic neuritis was consistent with Plaintiff's MRI that revealed inflammatory demyelination of Plaintiff's brain and Plaintiff's MS. (R. 867). Plaintiff's balance difficulty resulted in Plaintiff's injury during a fall at work on October 26, 2009, and injury during a fall down stairs in 2012. (R. 226, 367). On October 26, 2010, Plaintiff was prescribed and fitted for an orthotic device to alleviate Plaintiff's jaw pain (R. 793), and an MRI scan completed on February 2, 2010, showed an annular tear at Plaintiff's L3-4 disc space, and broad based herniation of Plaintiff's L5-S1 disc segment with foraminal encroachment (obstruction of open spaces on sides of the vertebrae) of Plaintiff's L5 nerve root. (R. 328). On February 25, 2010, Dr. Tetro diagnosed Plaintiff with flexor carpi radialis tenosynovitis (inflammation of the sheath of Plaintiff's forearm tendon), and recommended that Plaintiff undergo a cortisone injection. (R. 364). Dr. Hojnacki completed a physical examination on Plaintiff on February 26, 2010, that showed Plaintiff with decreased ROM of both shoulders with pain upon motion, distal weakness in Plaintiff's fingers, pain in Plaintiff's hips and lower extremities, and difficulty with tandem gait and inability to hop on either foot because of pain. (R. 367). Plaintiff's reported pain from Plaintiff's MS and injury at work are supported by substantial evidence. The ALJ's finding on Plaintiff's credibility is therefore without support of substantial evidence and also requires remand.

<u>Residual Functional Capacity</u>

Once an ALJ finds a disability claimant does not have a severe medically determinable physical or mental impairment, 20 C.F.R. § § 404.1520(a)(4)(ii), that significantly limits the claimant's physical and mental ability to do work activities, *Berry*, 675 F.2d at 467, and the claimant is not able, based solely on medical evidence, to meet the criteria established for an impairment listed under Appendix 1, the burden shifts to the Commissioner to show that despite the claimant's severe impairment, the claimant has the residual functional capacity to perform alternative work, 20 C.F.R. § 404.1520(a)(4)(iv), and prove substantial gainful work exists that the claimant is able to perform in light of the claimant's physical capabilities, age, education, experience, and training. *Parker*, 626 F.2d 225 at 231. To make such a determination, the Commissioner must first show that the applicant's impairment or impairments are such that they nevertheless permit certain basic work activities essential for other employment opportunities. *Decker v. Harris*, 647 F.2d 291, 294 (2d Cir. 1981). Specifically, the Commissioner must demonstrate by substantial evidence the applicant's "residual functional capacity" with regard to the applicant's strength and "exertional capabilities." *Id*. An individual's exertional capability refers to the performance of "sedentary," "light," "medium," "heavy," and "very heavy" work. *Decker*, 647 F.2d at 294. In this case, the ALJ determined that Plaintiff had the residual functional capacity to perform the full range of work at all exertional levels and perform simple, unskilled work with occasionally detailed tasks and occasional interaction with the public. (R. 26).

ALJs are "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole," and residual functional capacity

assessments may not perfectly correspond with any individual medical opinion.  *See*

*Matta v. Astrue,* 508 Fed. App'x 53, 56 (2d Cir. 2013).  "When determining a claimant's

RFC, the ALJ is required to take the claimant's reports of pain and other limitations into

account, but is not required to accept the claimant's subjective complaints without

question; he may exercise discretion in weighing the credibility of the claimant's

testimony in light of the other evidence." *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir.

2010).

In this case, the ALJ determined that Plaintiff was able to perform less than the

full range of sedentary work with limitations to lifting and carrying ten pounds, sitting for

six hours, standing or walking for two hours in an eight-hour workday, no work around

unprotected heights or heavy, moving or dangerous machinery, climbing ropes, ladders

or scaffolds, or exposure to cold or damp areas with occasional limitations to bending,

crawling, stooping, squatting, balancing, and kneeling, and reaching in all directions with

the upper right extremity, handling with the right hand, pushing and pulling with the right

upper extremity, and peripheral vision or depth perception.  (R. 19).

Plaintiff contends that the ALJ's residual functional capacity assessment is

without substantial evidence as the ALJ rejected Dr. Tetro's January 5, 2010, finding

that Plaintiff was limited to lifting ten pounds, and evidence to support that Plaintiff's

condition deteriorated after Plaintiff's date last insured.  Plaintiff's Memorandum at 8.

Plaintiff further contends that the ALJ should not have included Plaintiff's testimony that

he no longer received treatment for his MS within the ALJ's residual functional capacity

assessment.  Plaintiff's Memorandum at 7.  Defendant maintains that the ALJ correctly

afforded little weight to the opinions of Drs. Horvath, Huckell, and Tetro, as such

opinions were put forth after Plaintiff's date last insured, and that any evidence that

Plaintiff became incapacitated after that date is irrelevant. Defendant's Memorandum at

18. As indicated, Discussion, *supra* at 14-16, remand is required to afford the ALJ the

opportunity to re-contact Plaintiff's treating physicians and determine whether Plaintiff's

condition deteriorated between Plaintiff's date last insured and Plaintiff's more recent

medical examinations. *See Kirkland v. Colvin,* 2016 WL 850909, at *12 (W.D.N.Y. Mar.

4, 2016). Upon remand, the ALJ should include evidence submitted around Plaintiff's

date last insured and include such evidence in the ALJ's residual functional capacity

assessment of Plaintiff. Plaintiff's motion on this issue should be GRANTED.

## E. <u>Suitable Alternative Employment in the National Economy</u>

In addition to determining whether a disability claimant has the residual functional

capacity to return to work, the Commissioner must establish that the claimant's skills are

transferrable to the new employment if the claimant was employed in a "semi-skilled" or

"skilled" job.[11] *Id.* at 294. This element is particularly important in determining the

---

[11] The regulations define three categories of work experience: "unskilled", "semi-skilled", and "skilled". *Decker, supra*, at 295.

"Un-skilled" is defined as: "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength....primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in thirty days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs."
20 C.F.R. § 404.1568(a).

"Semi-skilled work" is defined as: "work which needs some skilled but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."
20 C.F.R. § 404.1568(b).

second prong of the test, whether suitable employment exists in the national economy. *Id.* at 296. Where applicable, the Medical Vocational Guidelines of Appendix 2 of Subpart P of the Regulations ("the Grids") may be used to meet the Secretary's burden of proof concerning the availability of alternative employment and supersede the requirement of VE testimony regarding specific jobs a claimant may be able to perform in the regional or national economy. *Heckler v. Campbell*, 461 U.S. 458, 462 (1983).

Plaintiff contends that the ALJ erred in not including Dr. Tetro's finding that Plaintiff had a limitation to lifting no more than 10 pounds in the ALJ's hypothetical posed to the VE during Plaintiff's administrative hearing. Plaintiff's Memorandum at 8. Defendant maintains that no error results from the ALJ's failure to address Dr. Tetro's finding on Plaintiff's limitation to lifting 10 pounds, as the ALJ included such limitation in the ALJ's residual functional capacity assessment of Plaintiff. Defendant's Memorandum at 19.

During the administrative hearing on April 21, 2013, the ALJ posed a hypothetical question to the VE of whether an individual like Plaintiff, limited to lifting or carrying up to 10 pounds, able to sit and stand six hours in an eight-hour workday, with no work in areas of unprotected heights, around heavy, moving, or dangerous machinery, and no climbing ropes, ladders, or scaffolds, or work in areas exposed to cold or dampness, with occasional limitation to bending, climbing, stooping, squatting, kneeling, balancing, and crawling, reaching in all directions with the right upper extremity, handling with the right hand, pushing and pulling with the right upper extremity, and occasional limitation to peripheral or depth perception, and limited to sedentary work would be able to perform any jobs in the regional or national economies

(R. 66-67), and asked the VE to provide a list of jobs that such an individual would be capable of performing, to which the VE opined would include the positions of  food and beverage order clerk, unskilled work with a sedentary exertional level, with 208,880 jobs available in the national economy (R. 68), and lens inserter, unskilled, sedentary work with 218,740 jobs available in the national economy (R. 69), and waxer, unskilled work with a sedentary exertional level, with 419,840 job positions available in the national economy.  (R. 69).  The ALJ then altered the hypothetical to include the occasional limitation to the ability to perform certain activities within a schedule and the ability to complete a normal workday or workweek because of pain and fatigue, to which the VE opined that Plaintiff would not be able to perform the jobs identified.  (R. 70). Because the VE's testimony will necessarily be altered upon the ALJ finding a different residual functional capacity on remand, Discussion, *supra* at 21-21, upon remand, the ALJ should also be directed to obtain new hearing testimony from a VE, and pose hypothetical questions to the VE that include any revised residual functional capacity upon remand.  *See Wagner v. Colvin*, 2017 WL 743732, at *3 (W.D.N.Y. Feb. 27, 2017) (ALJ should obtain new vocational expert testimony after further review of the record results in a new residual functional capacity assessment).  Plaintiff's motion on this issue should be GRANTED.

## **CONCLUSION**

Based on the foregoing, Plaintiff's motion for judgment on the pleadings (Doc.

No. 5) should be GRANTED; Defendant's motion for judgment on the pleadings (Doc.

No. 11) should be DENIED, and the matter REMANDED for further proceedings

consistent with this Report and Recommendation.

Respectfully submitted,

/s/   *Leslie G. Foschio*

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      October 4, 2017
            Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that the Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to the Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of the Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

SO ORDERED.

/s/     *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      October 4, 2017
            Buffalo, New York